RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0177P (6th Cir.)
File Name: 03a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PHILLIP GRIFFIN,
  *Petitioner-Appellant,*

  *v.*    No. 01-3818

UNITED STATES OF AMERICA,
  *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 01-00590—David D. Dowd, Jr., District Judge.

Submitted: March 14, 2003

Decided and Filed: June 4, 2003

Before: MOORE and GIBBONS, Circuit Judges; COHN,*
District Judge.

———————————

### COUNSEL

**ON BRIEF:** Joseph M. Pinjuh, UNITED STATES
ATTORNEY, Cleveland, Ohio, for Appellee. Phillip Griffin,
Bradford, Pennsylvania, pro se.

————————

\* The Honorable Avern Cohn, United States District Judge for the
Eastern District of Michigan, sitting by designation.

———————————

### OPINION

———————————

AVERN COHN, District Judge. This is a habeas case
under 28 U.S.C. § 2255. Phillip Griffin (Griffin), proceeding
*pro se*, appeals from the district court's denial of his motion
under section 2255. Griffin was convicted of distribution of
cocaine base; his conviction was affirmed on appeal. He says
that his trial counsel failed to tell him of a plea offer and
argues that this constituted ineffective assistance of counsel.
The government argues that the record shows that Griffin
would not have accepted a plea offer even if he had been told
about it.

For the reasons that follow, we reverse the decision of the
district court and remand the case for an evidentiary hearing.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Griffin was indicted on four counts of distribution of
cocaine base under 21 U.S.C. § 841 and for a criminal
forfeiture action under 21 U.S.C. § 853. At his arraignment
he pleaded not guilty. The district court held a hearing on
Griffin's motion to suppress evidence seized during a search
of his mother's home and on his motion to dismiss the
distribution counts. The district court denied both motions.

Approximately two weeks prior to the trial date, the
Assistant United States Attorney (AUSA) telephoned
Griffin's trial counsel to discuss a plea agreement. The
AUSA indicated that he thought a five year sentence would be
possible. The government says that the plea agreement was
contingent on Griffin cooperating with the authorities.
Griffin's attorney responded – in that telephone conversation
– that Griffin maintained his innocence and would not plead
guilty. Griffin says that his attorney never mentioned the plea
offer to him. Griffin's attorney does not recall any plea offer

being made. Griffin says his attorney also never discussed his potential sentence exposure with him.

Griffin went to trial before a jury. His codefendants, Brooke Thompson (Thompson) and Keith Walker (Walker), entered cooperative agreements with the government. Both pleaded guilty; Thompson received a three year sentence and Walker received a six and a half year sentence. Both testified at Griffin's trial, and Griffin says their testimony destroyed his defense. Griffin's attorney never informed him that they were going to testify.

The district court granted Griffin's motion for a directed verdict as to counts three and four. The jury found Griffin guilty of counts one and two and entered a special verdict on the forfeiture action.

After he was convicted, Griffin obtained new counsel. His new attorney approached the government regarding Griffin's possible cooperation. Griffin executed a a proffer letter and agreed to make a statement. During the proffer, Griffin admitted selling drugs in the past but stated that he stopped some time in 1994 or 1995. He continued to deny his involvement in the offense for which he was convicted. The AUSA and a special agent advised Griffin that they doubted his veracity and terminated the proffer.

Griffin maintained his innocence in the preparation of the Presentence Investigation Report, which did not suggest any reductions for acceptance of responsibility. At the sentencing hearing he said:

> I think – I know I'm innocent of this action. And I didn't get those two guys any drugs. I was getting blamed for something I didn't do. And I'm going to prove that I did it. And I ain't never been in trouble with no law or anything like that. And they trying to get me ten years to life for something I didn't even do. I shouldn't get no more than about two or three years for something like this. . . . If I knew I could have got on that stand to – told a lie to get three years, I would have did the same thing

> too. But I knew I was innocent, and I didn't have to get up on the stand and tell any lie.

J.A. 169-70.

The district court sentenced Griffin to 156 months custody, five years supervised release, and a $200.00 special assessment. The district court also entered a final order of forfeiture. Griffin appealed his sentence; this Court affirmed the judgment of conviction in an unpublished opinion. *United States v. Griffin,* No. 98-4364, 2000 WL 377346 (6th Cir. Apr. 6, 2000) (unpublished).

The AUSA mentioned the plea offer to Griffin's appellate attorney prior to oral argument before this Court on direct appeal, saying that he was surprised Griffin did not accept the offer in light of the large amount of prison time he faced. Griffin's appellate attorney did not discuss the issue with Griffin until after the appeal. Griffin now says that given the potential sentence he faced, he would have accepted the plea offer had he known about it.

After learning about the plea offer, Griffin asked his trial attorney about it. The attorney wrote in reply:

> . . . I have no recollection of any deal being offered for you to me. I do recall telling you that if a deal were sought from the government it would have to include your willingness to be a witness for the government. As to this, while I do not have any recollection of having told you, as I have others, the fact is that I prefer not to represent informers. Indeed, more than once I have backed away from clients who wanted me to engineer a deal that would entail me being privy to efforts made by the client to inveigle someone into committing a crime so that the client could benefit from their arrest.
>
> This is not to say I have never represented an informer. I have never done so under the circumstances that were present when I represented you. I simply refuse to be conscripted into the war on drugs as a federal agent. I

personally do not approve of many of their methods. And I believe the guidelines are not only unfair, but slanted against black people.

J.A. 54-54. Griffin's trial attorney also signed an affidavit in connection with this habeas motion stating,

I have no recollection of having been told by anyone that the government was offering the defendant, Phillip Griffin, a five (5) year sentence or, for that matter, a sentence of any set number of years. On the other hand, I do recall being told by Phillip Griffin that he wanted to go to trial. Obviously he was convinced, as I was, that his arrest and the searches centralized in [sic] his case were illegal. Also, Phillip Griffin advised me that those who would be testifying against him would have to lie. Unfortunately for him the jury convicted him.

Also, I recall indicating to him that to make a deal with the government in this case he would have to implicate other people. This he said he could not do because he would have to lie.

J.A. 37.

Griffin filed a habeas petition. The district court denied the petition, finding that "Griffin's statements at sentencing clearly demonstrate that he was not prepared to accept a specific plea bargain at the time of the trial."

## II.  DISCUSSION

To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). Claims of ineffective assistance of counsel are appropriately brought by

filing a motion under section 2255. *United States v. Galloway*, 316 F.3d 624, 634 (6th Cir. 2003). We review the denial of a section 2255 motion *de novo*. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The *Strickland* standard applies to guilty pleas as well. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence. . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 58-59. It is therefore easier to show prejudice in the guilty plea context because the claimant need only show a reasonable probability that he would have pleaded differently. *See Ostrander v. Green*, 46 F.3d 347, 352 (4th Cir. 1995) *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214, 1222 (4th Cir. 1996).[1]

---

[1] As the court in *Ostrander* explained,
[T]he district court applied the wrong legal standard to Ostrander's ineffective assistance claim. It used the *Strickland v. Washington* test instead of the more specific *Hill v. Lockhart* standard for guilty pleas induced by ineffective assistance. There

A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test. *See Turner v. State*, 858 F.2d 1201, 1205 (6th Cir. 1988) (agreeing with the district court that "an incompetently counseled decision to go to trial appears to fall within the range of protection appropriately provided by the Sixth Amendment"), *vacated on other grounds*, 492 U.S. 901 (1989), *reinstated,* 726 F.Supp. 1113 (M.D.Tenn. 1989), *aff'd,* 940 F.2d 1000 (6th Cir. 1991).[2]

The second element of the *Strickland* test in the plea offer context is that there is a reasonable probability the petitioner would have pleaded guilty given competent advice. *See id.* at 1206.

---

is a significant difference between the tests. Under *Strickland,* the defendant shows prejudice if, but for counsel's poor performance, there is a reasonable probability that the outcome of the entire proceeding would have been different. Under *Hill,* the defendant must show merely that there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial.

*Id.*

[2] *See also United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994) ("If an attorney's incompetent advice regarding a plea bargain falls below reasonable standards of professional conduct, *a fortiori*, failure even to inform defendant of the plea offer does so as well"); *United States v. Rodriguez*, 929 F.2d 747, 753 (1st Cir. 1991) ("there is authority which suggests that a failure of defense counsel to inform defendant of a plea offer can constitute ineffective assistance of counsel on grounds of incompetence alone, even absent any allegations of conflict of interest"); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986) ("in the ordinary case criminal defense attorneys have a duty to inform their clients of plea bargains proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the Sixth and Fourteenth Amendments"); *United States ex rel Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982) ("a failure of counsel to advise his client of a plea bargain . . . constitutes a gross deviation from accepted professional standards").

Although some circuits have held that a defendant must support his own assertion that he would have accepted the offer with additional objective evidence, we in this circuit have declined to adopt such a requirement. Nevertheless, it has been held, as the district court recognized, that a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer. It follows that the district court did not err in relying on such a disparity, along with the unrefuted testimony of the petitioner, to support its conclusion that habeas relief was required in this case.

*Dedvukovic v. Martin*, 36 Fed. Appx. 795, 798 (6th Cir. 2002) (unpublished). In *Dedvukovic*, we found that where the defendant swore that his attorney never explained the significance of the government's plea offer to him, his attorney had no indication in her file that she had properly advised him of the offer and could not recall having done so (though it was her customary practice to do so), and there was a substantial disparity between the penalty offered by the government and the penalty called for by the indictment, the defendant showed a reasonable probability that he would have pleaded guilty had he received proper advice. *Id.* at 797-98.

The government concedes that it made at least a tentative plea offer and does not dispute on appeal that Griffin's counsel did not inform him of it. It argues only that the record does not support Griffin's claim that he would have pleaded guilty if he had known of the plea offer. The government notes that "the record is replete with Griffin's protestations of his own innocence," including his testimony at the suppression hearing and at sentencing, his statements to the probation officer responsible for writing the presentence report, and his failure to cooperate with the government post-conviction. Griffin says he would have accepted the plea if he had known about it and his potential sentencing exposure. Griffin argues that the district court should at least have held

an evidentiary hearing to determine the factual issues and circumstances surrounding the plea offer.

Griffin's repeated declarations of innocence do not prove, as the government claims, that he would not have accepted a guilty plea. *See North Carolina v. Alford*, 400 U.S. 25, 33 (1970) ("reasons other than the fact that he is guilty may induce a defendant to so plead, . . . and he must be permitted to judge for himself in this respect" quoting *State v. Kaufman*, 2 N.W. 275, 276 (Iowa 1879)). Defendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government. It does not make sense to say that a defendant must admit guilt prior to accepting a deal on a guilty plea. It therefore does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea. Furthermore, a defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment. Finally, Griffin could have possibly entered an *Alford* plea even while protesting his innocence. *See id*. These declarations of innocence are therefore not dispositive on the question of whether Griffin would have accepted the government's plea offer.

The government further argues that even if Griffin had accepted the tentative plea offer, it would have been withdrawn by the government based on his failure to provide substantial assistance. The government says the offer would have been contingent on Griffin's successful cooperation with law enforcement and argues his failure to reach a post-conviction deal means he could not have reached a plea agreement before trial.[3] The government's claim that it would have rescinded its plea offer cannot be substantiated on the current record. If Griffin's attorney told him of the plea offer and explained the plea process to him, we cannot say, given the disparity in sentences and the evidence arrayed

---

[3]The government says that inherent in its offer is the notion that his cooperation with the authorities would have constituted substantial assistance under section 5K1.1 of the Sentencing Guidelines.

against him, that he would not have changed his mind and accepted the plea. Griffin says his protestations of innocence were the result of his inexperience with the criminal justice system and not a reflection of his unwillingness to plead and we cannot find otherwise based on the evidence before us. On the current record, it is impossible to tell whether Griffin would have been sufficiently cooperative to obtain the government's assent to the possible plea agreement.

There is sufficient objective evidence in the record to warrant an evidentiary hearing to determine whether there is a "reasonable probability" that Griffin would have accepted the plea offer if he knew about it. The gap between his potential sentence if convicted and the plea offer is sufficient to merit an evidentiary hearing. *See Dedvukovic*, *supra* at 798; *see also United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998); *United States v. Blaylock*, 20 F.3d 1458, 1466-67 (9th Cir. 1994). The fact that he was unaware that his codefendants were going to testify against him in exchange for substantially lesser sentences is further evidence suggesting he might have accepted the plea offer had he been fully informed. *See Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996) (finding there was a reasonable probability that a defendant would have accepted a plea offer if his attorney had provided his professional opinion that it was "almost impossible" for a defendant in his position to obtain an acquittal). We have granted an evidentiary hearing where an offender did not know the government was proposing sentence enhancements despite the offender's concession "at sentencing that had he known the government was proposing a twenty-year minimum, he was unsure what his response would have been–'maybe' he would have made a different decision." *Dabelko v. United States*, No. 98-3247, 2000 WL 571957, at *4 (6th Cir. May 3, 2000) (unpublished).

We recognize that we must exercise caution in ordering an evidentiary hearing, since it might encourage defendants to try to manipulate the criminal justice system to obtain the advantage of a trial with its chance of acquittal as well as the

advantage of a plea with its lesser sentence. *See id.* at *3. This concern, however, is mitigated by the fact that

> [m]ost defense lawyers, like most lawyers in other branches of the profession, serve their clients and the judicial system with integrity. Deliberate ineffective assistance of counsel is not only unethical, but usually bad strategy as well. For these reasons and because incompetent lawyers risk disciplinary action, malpractice suits, and consequent loss of business, we refuse to presume that ineffective assistance of counsel is deliberate. Moreover, to the extent that petitioners and their trial counsel may jointly fabricate these claims later on, the district courts will have ample opportunity to judge credibility at evidentiary hearings.

*United States v. Day*, 969 F.2d 39, 46 n.9 (3rd Cir. 1992).

We are convinced that an evidentiary hearing is warranted under the circumstances here. Griffin has presented a potentially meritorious claim for ineffective assistance of counsel, and he deserves the right to develop a record to show there is a reasonable probability he would have accepted the plea.

### III.  CONCLUSION

For the foregoing reasons, the decision of the district court is REVERSED and the case is REMANDED for an evidentiary hearing on the question of whether there is a reasonable probability that Griffin would have accepted a plea offer if he had known about it.