**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0404n.06

**Case No. 08-2498**

**FILED**
**Jul 12, 2010**
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **BRADLEY LEATHERMAN,** | ) | |
| | ) | |
| **Petitioner-Appellee,** | ) | |
| | ) | **ON APPEAL FROM THE** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| **CARMEN PALMER, Warden,** | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| **Respondent-Appellant.** | ) | |
| | ) | |

Before: BATCHELDER, Chief Judge; SUTTON, Circuit Judge; WISEMAN, District Judge.[*]

**ALICE M. BATCHELDER, Chief Circuit Judge.** The district court granted a writ of habeas corpus on the basis that the petitioner's trial counsel provided ineffective assistance by failing to fully and effectively relay a plea-agreement offer to the petitioner prior to trial. We affirm.

**I.**

On Saturday, June 28, 2003, petitioner Brad Leatherman's niece, an eight-year-old girl, spent the night with her three cousins — Leatherman's daughters, aged ten, eight, and four — at the Leatherman's home. The next day, she told her mother that Leatherman had molested her.

The county prosecutor charged Leatherman with one count of First Degree Criminal Sexual Conduct (CSC-1), which carried a potential sentence of 85 to 480 months in prison; two counts of Second Degree Criminal Sexual Conduct (CSC-2), which carried a potential sentence of 60 to 180

---

[*]The Honorable Thomas A. Wiseman, United States District Judge for the Eastern District of Michigan, sitting by designation.

months; and one count of accosting a child for immoral purposes, 32 to 48 months.  Leatherman proclaimed his innocence, hired a lawyer (James Champion), and prepared to go to trial.

Just prior to a preliminary hearing, at which the then-nine-year-old girl would testify for the first time, the prosecutor offered Leatherman a plea deal in an effort to avoid the child's having to testify:  if Leatherman would plead guilty (or no contest) to one count of CSC-2, the prosecutor would dismiss the other charges and recommend probation and a 12-month maximum jail sentence, with a "*Killebrew*."  In Michigan, a *Killebrew* sentence agreement is binding between the parties but if the judge rejects the prosecutor's recommendation, then the defendant may withdraw his guilty plea and proceed to trial.  *See Michigan v. Killebrew*, 330 N.W.2d 834 (Mich. 1982).

The first dispute in this case is whether Champion actually relayed this offer to Leatherman. Leatherman contends that Champion did not; Champion claims that he did, but concedes that he did not do so fully and effectively.  In any event, Leatherman (or Champion) declined the offer and the parties proceeded with the preliminary hearing, at which the girl testified.  The second dispute is whether Leatherman would have accepted the offer had it been properly relayed to him.  And the third dispute is whether the court would have accepted the plea recommendation at that time.

Later, at the final pretrial conference, the prosecutor again offered Leatherman a plea deal: if Leatherman would plead guilty (or no contest) to one count of CSC-2 and accosting a child for immoral purposes, the prosecutor would dismiss the other two charges and recommend probation with a 12-month maximum jail sentence, with a "*Cobbs*" rather than a "*Killebrew*."  In Michigan, a *Cobbs* evaluation is not a binding agreement, but is a preliminary assessment by the judge as to the likely sentence.  *See Michigan v. Cobbs*, 505 N.W.2d 208 (Mich. 1993).  In this case, the judge

rejected the prosecutor's recommendation during the *Cobbs*, so Leatherman declined the offer.

Leatherman proceeded to trial whereupon the jury convicted him on all four counts. The state trial court sentenced Leatherman to 85 to 480 months in prison pursuant to the CSC-1 conviction, and lesser sentences for the other three counts, to run concurrently. Leatherman moved for a new trial and requested a *Ginther* hearing, *see Michigan v. Ginther*, 212 N.W.2d 922 (Mich. 1973), to investigate his claim that his attorney had been constitutionally ineffective. The trial court conducted the hearing but denied the motion, finding that Leatherman could not establish that his former attorney, Champion, had failed to convey the offer or that he would have accepted it.

Leatherman appealed, pressing his claim that Champion had provided ineffective assistance by failing to advise him of the original plea offer. The state intermediate court of appeals determined that Champion had, in fact, relayed the offer but had failed to explain it adequately to Leatherman, and that Champion's performance had therefore been deficient. That court further determined, however, that Leatherman had not established that he would have accepted the offer had he understood it and, therefore, "he did not prove prejudice by a preponderance of the evidence." The appeals court affirmed the trial court. The Michigan Supreme Court denied Leatherman leave to appeal.

Leatherman filed for habeas review in the district court, claiming ineffective assistance of counsel for Champion's failure to properly advise him of the plea offer. The district court referred the case to a magistrate judge, who began his analysis by explaining that the state appellate court had unquestionably misapplied clearly established law by applying the preponderance-of-the-evidence standard to the question of *Strickland* prejudice. The magistrate judge analyzed the question *de novo*

and, finding a reasonable probability that Leatherman would have accepted the offer had he been properly informed, recommended that the district court grant habeas relief. The State objected to the recommendation, but the district court overruled the objection and granted habeas relief.

In conducting its own analysis, the district court began with the principle that "a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer." *Griffin v. United States*, 330 F.3d 733, 737-38 (6th Cir. 2003) (quoting *Dedvukovic v. Martin*, 36 F. App'x 795, 798 (6th Cir. 2002)); *accord United States v. Morris*, 470 F.3d 596, 602-03 (6th Cir. 2006); *Magana v. Hofbauer*, 263 F.3d 542, 551-52 (6th Cir. 2001). In this case, the disparity between the sentence that the prosecutor offered in the proposed plea bargain (probation including up to one year of jail time) and the maximum sentence called for by the statute (85 to 480 months in prison), was certainly significant.

The district court rejected the State's argument, which was based on Leatherman's out-of-context *Ginther*-hearing testimony. At the *Ginther* hearing, Leatherman stated unequivocally that he would have accepted the offer and then justified that statement by explaining that he would have been at home and would not have risked being separated from his family. The State argued that, because the offer would have subjected Leatherman to 12 months in jail, away from his home and family, this proves that he would have declined the offer. The district court rejected this argument as a distortion of Leatherman's testimony, taken out of context, and insufficient to overcome his plain statement.

The district court also rejected the State's argument that Leatherman could not establish

4

prejudice because he could not prove that the state trial court judge would have accepted the recommended sentence. The district court explained, by way of a Second Circuit case, that "it need not determine whether the [state] trial court would have accepted the plea in order to find prejudice due to ineffective assistance of counsel." *See Mask v. McGinnis*, 233 F.3d 132, 142 (2d Cir. 2000) ("[N]othing in the standards established by the Supreme Court in either *Strickland* or *Hill* require an evaluation of whether the court would have accepted a different plea agreement."). In *Hill*, the Supreme Court had reiterated its instruction that an evaluation of prejudice "should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 695 (1984)).

Thus, the district court granted the writ and ordered the State to make Leatherman the same offer that it had made him originally (CSC-2 with a sentence recommendation of probation including up to one year of jail time, with a *Killebrew*). The court also ordered that if the state court were to reject the prosecutor's recommendation, then it must afford Leatherman a new trial.

## II.

Leatherman filed for habeas relief on October 4, 2006, so the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), applies.

Under AEDPA, a writ may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent or "was based on an unreasonable determination of facts in light of the evidence presented" during the state court proceedings. 28 U.S.C. § 2254(d)(1)-(2). "Contrary to federal law" means it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case

5

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Unreasonable application of Supreme Court precedent" means it "identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts" of the case. *Id*. at 413.

"[A] state-court decision [is] contrary to clearly established federal law if, in spite of the rule in *Strickland* — that a petitioner urging ineffective assistance of counsel need only show a 'reasonable probability' of prejudice — a state court required the petitioner to show prejudice by a preponderance of the evidence." *Holder v. Palmer*, 588 F.3d 328, 343 (6th Cir. 2009) (quoting *Fulcher v. Motley*, 444 F.3d 791, 799 (6th Cir. 2006)) (editorial marks and certain quotation marks omitted). Of course, reaching this holding was not particularly difficult inasmuch as the Supreme Court had already spoken directly to this issue, albeit in dicta, explaining by example:

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a 'reasonable probability that . . . the result of the proceeding would have been different.'

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (quoting *Strickland*, 466 U.S. at 694).

In the present case, the state appellate court "conclude[d] that the [state] trial court did not err in finding that [Leatherman] did not prove prejudice by a preponderance of the evidence." Therefore, the state courts applied the wrong standard of proof (i.e., the wrong law). But that does not end our analysis or decide the present question. Even "[t]hough the state court clearly applied an incorrect standard," we must nonetheless decide whether "it reached the correct outcome." *West*

6

*v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008). That is, we must conduct "[a] careful review of the record" to determine whether Leatherman's counsel (Champion) was "so ineffective as to constitute a denial of [Leatherman's] constitutional rights." *See id*. We conduct this review *de novo*.[1]

**III.**

On appeal, the State concedes that Champion failed to adequately advise Leatherman about the plea offer but insists that Leatherman would not have accepted the offer. The State bases this argument on its interpretation of Leatherman's *Ginther*-hearing testimony. The State also insists that the judge likely would have rejected the sentence recommendation at the *Killebrew* phase.

First, the *Ginther*-hearing testimony on which the State relies is ambiguous at best and — as the magistrate judge and district court both agreed — taken entirely out of context. When Leatherman's testimony is read in context and in its entirety, it is clear that Leatherman offered these statements to explain why he would have accepted the offer (and 12 months in jail), despite maintaining his innocence. That is, if his attorney, Champion, had adequately explained to him that he would likely be convicted and sentenced to up to 40 years in prison, but that the prosecutor was offering 12 months in jail (in order to avoid the girl's having to testify), Leatherman would have accepted the offer because he could not bear to be away from his family for the next 39 years.

---

[1]While the panel in *West* did not specifically state the standard governing its review, it is clear from the opinion that it conducted a plenary review of the record and application of those facts to *Strickland*'s prescribed standard. *See, e.g.*, *West*, 550 F.3d at 554 ("A careful review of the record demonstrates . . ."; "We are not convinced . . ."; "Under *Strickland*, we must . . ."), 555 (". . . the record demonstrates . . ."), 556 ("Finally, we note that even if West could prove . . . he has not shown . . ."; "We are not convinced . . ."; "Given the strength of the evidence . . . we cannot conclude . . ."); *see also, e.g.*, *id*. at 568 (Moore, J., dissenting) ("Applying the *Strickland* standard, I conclude that . . . . Several pieces of evidence demonstrate . . ."; "I further conclude that West was prejudiced by this deficiency."). We also relied on Sixth Circuit precedent to support our analysis. *Id*. at 555 (citing *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000) ("similar conclusion"), and *Fautenberry v. Mitchell*, 515 F.3d 614 (6th Cir. 2008) ("similar situation")).

The State also disagrees with our Circuit precedent, in which we have held that a "substantial disparity" between the sentence offered and the sentence likely to be imposed upon conviction demonstrates such an enticing offer that we can presume that a "properly informed and advised" defendant would have accepted it. *Griffin*, 330 F.3d at 737-38. That is, we presume that it was Champion's admitted failure to sufficiently inform or advise Leatherman that caused Leatherman to decline the original offer. But the State wants us to ignore that presumption and hold that Leatherman declined the offer because he was unwilling to go to jail for even one day. Such a conclusion is unsupportable under our precedent and unjustified by the testimony in the record.

Finally, the State argues that the state court judge would not have accepted the prosecution's offer anyway, so even if Leatherman would have accepted the offer, he cannot establish any prejudice. There are at least three flaws in this argument. The first, as the district court noted, is that neither *Strickland* nor *Hill* requires Leatherman to demonstrate that the judge would have accepted the recommendation in order to show prejudice from his not having been given the choice.

Also, despite the State's assertion, the judge who rejected the pretrial-conference *Cobbs* plea would not necessarily have been the "same judge" who earlier would have considered the preliminary-hearing *Killebrew* plea. In Michigan, criminal trial courts are separated into Circuit Division Courts and District Division Courts. *See* Michigan Judicial System, http://courts.michigan.gov/scao/ resources/publications/pamphlets/onecourt.pdf (last visited June 24, 2010). Circuit Division Courts have jurisdiction over felonies and serious misdemeanors, but the District Division Courts conduct the preliminary examinations in felony cases and adjudicate cases in which the punishment does not exceed one year in jail. In the present case, District Division Judge Gary

8

Holman conducted the preliminary hearing and would have considered the *Killebrew*-phase plea-offer sentence recommendation (probation including up to one year of jail time). After the preliminary hearing, when no plea agreement had been reached, the case was assigned to Circuit Division Judge James Fisher, who declined the recommended sentence during the *Cobbs* phase and eventually imposed the post-jury-verdict sentence (85 to 480 months in prison).

Finally, the surrounding circumstances were different at the different stages of the proceedings. Prior to the preliminary hearing, the nine-year-old girl had not yet testified and the prosecutor was offering Leatherman the plea bargain in order to avoid her having to testify. It is reasonable that a trial judge would be more willing to accept a prosecutor's recommendation at this point, when there is a clear benefit to the witness and the court, than at a later point, after the witness had already testified and the judge had become more substantially involved in the case.

We therefore conclude that Leatherman would have accepted the offer and reject the State's contention that Leatherman cannot demonstrate prejudice from his attorney's deficient performance.

**IV.**

For all of the foregoing reasons, we **AFFIRM** the district court's judgment.

9