NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0481n.06

Case No. 12-2223

FILED
*Jul 03, 2014*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSEPH ROVESS STINES, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellee. | ) | O P I N I O N |
| | ) | |

BEFORE: BOGGS, COLE and McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge. This case presents an appeal from the denial of relief under 28 U.S.C. § 2255 in relation to a 1999 conviction and sentence for conspiracy to possess and distribute cocaine and cocaine base. Defendant Joseph Stines' conviction and sentence were affirmed on direct appeal. *United States v. Stines*, 313 F.3d 912 (6th Cir. 2002). Stines moved to vacate the conviction and sentence under § 2255 based largely on the claim that the prosecution suppressed *Brady* material and suborned perjury from cooperating co-conspirator witnesses. The district court conducted an evidentiary hearing, found the testimony of the sole witness presented "inherently incredible," and denied the motion. The district court granted a certificate of appealability on the prosecutorial-misconduct claim. We later expanded the certificate to include a second claim, for ineffective assistance of appellate counsel, in the event Stines were held to

have procedurally defaulted the first claim. For the reasons that follow, we affirm the denial of relief.

**I**

In the late 1980s and 1990s, Stines was the ringleader of a street gang known as Stone Life in Ypsilanti, Michigan. *Stines*, 313 F.3d at 914. During an investigation of Stone Life conducted in the late 1990s, undercover officers participated in and observed a series of cocaine purchases. Stines and six co-conspirators – Durand Ford, Keith Phelan, Kenneth Jefferson, Antonio James, David Bowles, and Aaron Bowles – were indicted for conspiracy to possess and distribute cocaine and cocaine base. Several co-conspirators cooperated with the government pursuant to plea agreements assuring them of favorable treatment in exchange for their cooperation. All seven defendants, including Stines, were found guilty.

In conjunction with sentencing, the district court conducted two hearings in December of 1999 and February of 2000. The court determined that seven kilograms of crack cocaine and two kilograms of powder cocaine were attributable to Stines. In reaching this determination, the court relied on the trial testimony of Athaiah Reed, Walter Phelps, Eva Taylor, Reese Palmer, and Rasul Warren. Considering the witnesses' testimony, Stines' involvement as the leader of Stone Life, and Stines' prior criminal history, the court determined the applicable sentencing guidelines range to be 360 months to life. Stines was sentenced to a prison term of 400 months on February 22, 2000.

Stines timely filed a notice of appeal. Several months later, while the appeal was pending, he filed a motion for new trial in the district court, alleging prosecutorial misconduct and suppression of *Brady* material. The district court denied the motion for new trial for lack of jurisdiction because of the pendency of the direct appeal. Stines did not appeal the denial of the

motion for new trial, and the issues raised in that motion, akin to those now before us, were not addressed in our ruling affirming Stines' conviction and sentence on direct review. *See Stines*, 313 F.3d 912 (Appendix).

Stines filed his motion to vacate sentence pursuant to 28 U.S.C. § 2255 on October 12, 2004, contending, in relevant part, that prosecutorial misconduct deprived him of due process in trial and in sentencing, and that his appellate counsel was ineffective for having failed to appeal the denial of his motion for new trial.

In a series of status conferences, Stines' newly-appointed counsel requested an evidentiary hearing. Counsel summarized the substance of testimony that she expected to elicit in the evidentiary hearing from numerous witnesses who testified in Stines' trial, from the prosecuting attorney allegedly responsible for the misconduct, Assistant United States Attorney Richard Convertino, and from two district judges who imposed surprisingly lenient sentences on the cooperating witnesses. Stines' counsel acknowledged, however, that she was not prepared to immediately call any of these witnesses; that she needed the assistance of a court-appointed investigator to locate and interview witnesses; and that additional steps were necessary before she could call AUSA Convertino or the sentencing judges.

The district court granted the request for an evidentiary hearing but determined at the outset that it would be limited to the testimony of Rasul Warren, a member of the Stone Life gang and co-conspirator who had testified to having obtained a certain amount of cocaine from Stines. The inquiry would initially be limited to Warren because he appeared to offer the strongest evidence in support of Stines' motion. Warren not only received favorable sentencing treatment, like other cooperating witnesses, but also reported that he had given perjured testimony. That is, Warren was expected to testify that, in response to Convertino's prompting,

he attributed more drugs to Stine than he was responsible for. The district court indicated that it would potentially expand the hearing, depending on how Warren's testimony went.

The evidentiary hearing was held on January 22, 2010. Warren testified that AUSA Convertino encouraged him to testify in the 1999 trial that Stines was the supplier of all the cocaine seized from Warren at the time of his 1996 arrest, even though Warren recalled that it had come from more than one supplier. At the time of Stines' trial, Warren was already serving a prison sentence of 262 months. Convertino offered to move for reduction of his sentence in exchange for his cooperation. Warren cooperated and attributed all the cocaine he had to Stines. Subsequently, he was released from prison after serving just 47 months. According to Warren's "corrected" testimony, only part of the seized cocaine actually came from Stines, but Warren could not remember the name of any other supplier.

On completion of Warren's testimony, and consistent with the district court's order as to the scope of the evidentiary hearing, Stines' counsel acknowledged that no other witnesses were available to testify. The court directed counsel to submit closing arguments in writing after the hearing transcript was prepared. In his post-hearing brief, Stines argued that Warren's testimony made out a sufficient record to warrant relief but he renewed his earlier request to call other witnesses. The government's post-hearing brief took a three-pronged approach. First, the government renewed its motion to dismiss the § 2255 motion as barred by procedural default.[1] Second, the government explained why Warren's attempt to partially recant his trial testimony was not credible. Third, even if Warren's new testimony were credited, the government argued that Warren's drug-quantity clarification, viewed in light of the extensive evidence of Stines'

---

[1]Prior to the evidentiary hearing, the government moved to dismiss the motion based on procedural default. The government argued that Stines failed to preserve objection to the prosecutorial-misconduct issues when he failed to appeal the district court's denial of his motion for new trial.

responsibility for distributing multiple kilograms of cocaine over several years, would have had no impact on either the jury's verdict or the court's sentence.

The court issued a written opinion on December 1, 2010, denying Stines' § 2255 motion for new trial or resentencing. The court ignored the procedural default issue and proceeded to the merits of Stines' motion. Having observed Warren's testimony both in Stines' trial and in the evidentiary hearing, the court found that Warren's trial testimony was credible and his testimony in the evidentiary hearing was "inherently incredible." The court held Stines had failed to show by a preponderance of evidence either (a) that there was an express or tacit agreement between Convertino and Warren that should have been disclosed, or (b) that Convertino had suborned perjury. Distinguishing *Bell v. Bell*, 512 F.3d 223, 232–33 (6th Cir. 2008), the court implicitly determined that there was no need for additional testimony from other cooperating witnesses because, unlike in *Bell*, the understandings pursuant to which they testified had been disclosed and were used to effectively impeach them during Stines' trial, rendering putative evidence of even more favorable understandings immaterial for *Brady* purposes.[2]

Stines appealed the denial of his § 2255 motion and asked the court to certify two issues for appeal. The district court granted a certificate of appealability as to the prosecutorial-misconduct claim, but denied the certificate as to the ineffective-assistance-of-counsel claim. We later expanded the certificate to include the ineffective-assistance claim, to be considered in the event the prosecutorial-misconduct claim were held to be procedurally defaulted. Accordingly, the parties have briefed both issues. Yet, the district court did not address the procedural-default defense and instead addressed the merits of Stines' prosecutorial-misconduct

---

[2]Subsequently, on August 2, 2011, Stines filed a motion for reduction of sentence under 18 U.S.C. § 3582, based on retroactive application of the Fair Sentencing Act of 2010. The court granted the motion, reducing Stines' prison sentence to 330 months.

claim. This is the ruling challenged by Stines on appeal. The government has not filed a cross-appeal challenging the implicit denial of the procedural-default defense. We therefore confine our attention to the ruling challenged by Stines. Neither the procedural default defense nor Stines' attempt to excuse procedural default based on ineffective assistance is considered further.

## II

### A. Standard of Review

"In reviewing the denial of a 28 U.S.C. § 2255 motion, we apply a de novo standard of review to the legal issues and uphold the factual findings of the district court unless they are clearly erroneous." *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009). To warrant relief under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). Stines contends that his sentence should be vacated because the prosecution's suppression of *Brady* material and suborning of perjury deprived him of a fair trial and fair sentencing.

Pursuant to the rule of *Brady v. Maryland*, 373 U.S. 83, 87 (6th Cir. 1963), the prosecution is obliged to disclose all material, exculpatory evidence to a defendant. The rule encompasses impeachment evidence as well. *United States v. Bagley*, 473 U.S. 667, 676–77 (1985). Where such evidence is "material" to guilt or innocence, a failure to disclose it results in a due process violation, irrespective of the good faith or bad faith of the prosecution. *Bell*, 512 at 231. A successful *Brady* claim requires a three-part showing: (1) that the withheld evidence was favorable to the defendant; (2) that the prosecution suppressed the evidence, either purposefully or inadvertently; and (3) that the suppression resulted in prejudice to the defendant. *Id.* To satisfy the prejudice prong, Stines must show that disclosure of the favorable evidence would

have created a "reasonable probability" of a different result, such that the government's suppression of the evidence "undermines confidence in the outcome." *Id.* at 236 (quoting *Bagley*, 473 U.S. at 678, 682). Evidence that is "merely cumulative" of evidence presented at trial is not "material" for purposes of the *Brady* analysis. *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010).

Similarly, the prosecution's alleged misconduct in knowingly soliciting or allowing false testimony also comes under the *Brady* disclosure doctrine:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*Id.* at 894–95 (quoting *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)).

**B. Analysis**

The district court based its denial of relief largely on the record established at the evidentiary hearing, consisting of the testimony of Stines' co-conspirator, Rasul Warren, followed by the parties' post-hearing briefs. The court recognized that a witness's recantation of trial testimony in post-conviction proceedings is viewed with great suspicion, citing *Brooks*, 626 F.3d at 897. The court recalled its observations of Warren's trial testimony ten years earlier and compared it with his testimony at the evidentiary hearing. The court found Warren's trial testimony regarding his gang-member and drug-trafficking relationship with Stines consistent with other trial testimony. Conversely, the court explained why it found Warren's "new" testimony "inherently incredible." Among other things, the court noted Warren's reluctance to provide complete answers and characterized his testimony as "replete with evasiveness."

In challenging this reasoning, Stines points to other evidence of wrongdoing by AUSA Convertino in this and other cases and argues that Warren's new testimony "does not seem so far-fetched at all." He notes that, apart from its inconsistency with his original trial testimony, Warren's new testimony about Convertino's misconduct has not been rebutted by the government.

The district court's credibility determination is reviewed under the "highly deferential clear-error standard." *Id.* Stines has fallen short of showing clear error in the court's assessment of Warren's credibility. Stines gives no persuasive reason to disturb the assessment of the trial judge, who had extensive opportunity to observe Warren's demeanor and comportment both at trial and in the evidentiary hearing. Because the district court found Stines' most promising witness "not close to credible," the court saw no need to continue the evidentiary hearing to entertain additional testimony tending to rebut or corroborate Warren's testimony. And because the court found Warren's testimony not credible, it concluded that Stines had failed to substantiate his allegations (1) that there was either an express or tacit agreement between Warren and Convertino that remained undisclosed by the prosecution; or (2) that Convertino solicited false testimony from Warren.

In connection with Stines' allegation that several other cooperating witnesses were promised even more favorable assistance from Convertino than they disclosed in their trial testimony, the district court observed that it "had been apparent throughout the testimony in this case − that every witness who was involved in drug trafficking had been promised something with regard to sentencing in exchange for their testimony" and "was cross-examined extensively about that consideration." R. 695, Opinion and Order at 6, Pg ID 3485. The court distinguished this case from the situation presented in *Bell*, 512 F.3d at 232–33, where the alleged

consideration was undisputedly not disclosed by the prosecution. The court thus implicitly determined that there was no need to expand the evidentiary hearing and entertain additional testimony regarding specific representations that may have been made to witnesses concerning the *extent* of assistance the prosecution intended to provide in exchange for their testimony.

Indeed, any evidence clarifying the nature of promises or assurances made would appear to be "merely cumulative" and therefore not "material" for *Brady* purposes. *Brooks*, 626 F.3d at 893. This is precisely the conclusion reached in *Jefferson v. United States*, 730 F.3d 537 (6th Cir. 2013), where we addressed substantially identical *Brady* claims (involving many of the same witnesses) by one of Stines' co-defendants, Kenneth Jefferson. As we observed in *Jefferson*, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Id.* at 550 (quoting *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000)). *See also Akrawi v. Booker*, 572 F.3d 252, 264 (6th Cir. 2009) (holding that, where the jury heard substantial evidence of the potential for a charge-reduction deal, but a mutual understanding remained undisclosed, the possibility that disclosure of that understanding might have made cross-examination incrementally more effective was insufficient to establish prejudice for *Brady* purposes).

In *Jefferson*, we considered very similar allegations that the prosecution failed to disclose evidence of tacit agreements that AUSA Convertino had reached with many of the same cooperating witnesses discussed in Stines' § 2255 motion. We acknowledged that evidence that witnesses were offered even more favorable deals than was disclosed could have been used to more effectively discredit their testimony and was therefore favorable to the defendant,

satisfying the first prong of the *Brady* rule. *Jefferson*, 730 F.3d at 550. Insofar as evidence of more favorable deals existed and was not disclosed, we held that the prosecution had "suppressed" what it was obliged to disclose, thus satisfying the second prong of the *Brady* rule. *Id.* As to the third prong, however, we held, in relation to five of the same witnesses whose testimony is implicated in this case (i.e., Rasul Warren, Tali Alexander, Reese Palmer, Labron Nunn and Eva Taylor), that the requisite showing of "materiality" or prejudice was lacking. *Id.* at 551–53.

We noted that the mere fact that the witnesses later received favorable sentencing or prosecution treatment "is not evidence that a deal existed prior to their testimony at trial." *Id.* at 552 (quoting *Williams v. Coyle*, 260 F.3d 684, 707 (6th Cir. 2001)). Further, a "witness's expectation of a future benefit is not determinative of the question of whether a tacit agreement subject to disclosure existed." *Bell*, 512 F.3d at 233. "The government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, *provided* that it does not promise anything to the witnesses prior to their testimony." *Id.* at 234 (quoting *Shabazz v. Artuz*, 336 F.3d 154, 165 (2d Cir. 2003)). It follows that although the prosecution is obliged to disclose promises that have been made to witnesses to induce their cooperation, prosecutors retain discretion to *further* reward witnesses after their cooperation, so long as the further reward was not promised before their testimony.

But even assuming impeachment evidence was improperly suppressed, we noted in *Jefferson* that all of the above five witnesses were cross-examined regarding their deals with the government resulting in favorable treatment. The jury had thus been made aware of the incentives each witness had to testify in a manner favorable to the prosecution. Hence, we

concluded that the additional impeachment evidence would not have "put the whole case in such a different light as to undermine confidence in the verdict." *Jefferson*, 730 F.3d at 553 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

Stines is not oblivious to our ruling in *Jefferson* or its significance to his case. He contends that *Jefferson* is distinguishable. Here, he argues, beyond the pervasive evidence of Convertino's disregard of his *Brady* obligations, we have Rasul Warren's sworn testimony that Convertino also encouraged and allowed him to give false testimony regarding the quantity of drugs Stines was responsible for. This, in combination with circumstantial evidence that Warren and other witnesses ultimately received more favorable treatment than they said they had been offered, is said to justify re-sentencing or at least a full evidentiary inquiry.

Stines' argument, attempting to distinguish this case from *Jefferson*, might gain traction but for the district court's finding that Warren's changed testimony was "inherently incredible." As explained above, this finding is not clearly erroneous.[3] Hence, we are left with a similar array of cooperating witnesses who received even more favorable treatment than they stated they had expected in exchange for their cooperation. In addition to the five cooperating witnesses

---

[3]Stines insists that even if he has failed to show clear error in the district court's assessment of Warren's credibility, we should find a "legal error of process" in that the court failed to explain the impact of the "Schools Memorandum" on the credibility assessment. The Schools Memorandum is a document submitted to the district court and disclosed to defense counsel under a protective order. As explained in *Jefferson*, 730 F.3d at 542, the Schools Memorandum summarizes the results of an internal investigation, conducted by the United States Attorney's Office, of suspected misconduct by AUSA Convertino in this and other cases.

Ostensibly, the district court refrained from mentioning it because it was subject to a protective order prohibiting disclosure of its contents. As indicated in *Jefferson*, the report "suggests there is evidence" of improper conduct by Convertino in relation to cooperating witnesses. The focus of the report is not on the validity of Stines' conviction or sentence. Rather, the report addresses whether Convertino's actions in seeking sentence reductions and downward departures were without supervisory approval. Upon review of its contents, we find no basis to disturb the district court's ruling on Stines' § 2255 motion. In regard specifically to Warren's credibility, we note that the report gives as many reasons to disbelieve or doubt Warren's new testimony as to credit it.

mentioned above, whose testimony was used by the prosecution against both Jefferson and Stines, Stines relies on the testimony of six other witnesses, Hans Thomas, Athaiah Reed, Walter Phelps, Carl Burton, Elwood Shemwell, and Oscar Little. Stines contends that the favorable treatment they ultimately received represents circumstantial evidence that AUSA Convertino promised or intended to help the witnesses more than they acknowledged when cross-examined at trial on the nature of their cooperation agreements. Such promises or intentions, he argues, ought to have been disclosed as *Brady* material.

Yet again, as we held in *Jefferson*, evidence that a cooperating witness subsequently received favorable treatment, in and of itself, is not conclusive evidence of a pre-existing promise or assurance of such treatment that would be subject to *Brady*'s disclosure requirements. And even if such evidence might be considered worthy of further inquiry, it is apparent, for the reasons explained in *Jefferson*, that any evidence of a pre-existing agreement that should have been disclosed would not satisfy the prejudice requirement under the *Brady* rule because, as our review of the record confirms, each of these additional witnesses, like those addressed in *Jefferson*, was subject to impeachment based on his or her agreement to cooperate with the prosecution. Evidence of additional bases on which to question their credibility would have been cumulative and is therefore not "material" for *Brady* purposes. This is true, notwithstanding evidence that Convertino's misconduct was not inadvertent but deliberate, because "the bad faith of the prosecutor does not impact our *Brady* analysis." *Jefferson*, 730 F.3d at 554 ("If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." (quoting *United States v. Agurs*, 427 U.S. 97, 110 (1976))).

Stines has failed to demonstrate that any of the cooperating witnesses who *might* have been called to testify in an expanded evidentiary hearing are situated any differently from those who were considered in *Jefferson.* Stines has presented no grounds for holding that disclosure of the additional impeachment evidence − even assuming cooperating witnesses were to testify as Stines expected − would have put the whole case in such a different light as to undermine our confidence in the outcome. Hence, we find no abuse of discretion in the district court's failure to expand the evidentiary hearing before denying Stines' motion for relief under § 2255.

## III

Accordingly, consistent with the analysis set forth in *Jefferson*, we find no error in the district court's denial of Stines' motion to vacate sentence under 28 U.S.C. § 2255. The ruling of the district court is therefore **AFFIRMED**.