# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10988

United States Court of Appeals
Fifth Circuit

**FILED**
November 20, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

DONALD RAYMOND SCRIBNER, II,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-1147

Before BARKSDALE, STEWART, and COSTA, Circuit Judges.

PER CURIAM:[*]

Federal prisoner Donald Scribner sought postconviction relief on the ground that his counsel was ineffective for giving incorrect advice about his sentence, which allegedly caused him to go to trial. After the district court denied his petition, we remanded because the district court had overridden credibility findings of the magistrate judge without hearing from the witnesses. *United States v. Scribner*, 832 F.3d 252, 260 (5th Cir. 2016). On remand, the district court held a hearing, after which it concluded that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10988

Scribner had failed to prove that he was prejudiced by counsel's misadvice. That determination was not clearly erroneous, so we AFFIRM.

I.

Police officers executed a search warrant on a home that was used as a marijuana grow house. They seized 560 marijuana plants. During the search, officers found a utility bill for another house. Two days later, officers conducted a knock-and-talk at the address listed on the utility bill. Scribner was in that home and he was arrested along with two others. The officers also recovered 79 marijuana plants, grow lights, and other equipment used to grow marijuana.

Scribner was interviewed twice following his arrest. During both interviews, he insisted he was hired to perform a "cleanup job," not to sell marijuana.

A grand jury charged Scribner with (1) conspiracy to manufacture and possess with intent to distribute marijuana and (2) aiding and abetting possession with intent to distribute marijuana. The government offered him a plea deal that would have allowed him to plead guilty to only the aiding and abetting count. Scribner rejected the plea and proceeded to trial. The jury found him not guilty of conspiracy, but guilty of aiding and abetting. The Presentence Report applied the career offender enhancement, which resulted in a recommended Guidelines range of 210 to 240 months. The district court adopted that range and sentenced Scribner to 210 months in prison.

Scribner did not know before trial that he was facing such a lengthy sentence. That is because his lawyer did not realize that he qualified as a career offender under the Guidelines. Without that classification, she estimated that a guilty plea would have resulted in a Guidelines range of 30 to 37 months. Under her calculation, a conviction after trial would have meant a

No. 17-10988

slightly higher range of 37 to 46 months.

After losing a direct appeal that challenged the sufficiency of the evidence to support his conviction, *United States v. Scribner*, 469 F. App'x 384, 385–86 (5th Cir. 2012), Scribner sought postconviction relief under 28 U.S.C. § 2255. His motion asserted two grounds of ineffective assistance of counsel: his counsel's failure to object to the career offender enhancement and his counsel's failure to predict he was subject to the enhancement. A magistrate judge held an evidentiary hearing and recommended the district court grant Scribner relief on the failure-to-predict ground. The district court, however, rejected part of the recommendation and denied relief. On appeal, this court held that the district court implicitly overruled some of the magistrate judge's credibility determinations, which it cannot do unless it first holds its own evidentiary hearing. *Scribner*, 832 F.3d at 260. Our court remanded the case for the district court to either accept the magistrate judge's credibility findings or hold its own evidentiary hearing. *Id.*

On remand, the district court held its own hearing. Scribner and his trial attorney testified.

Following the hearing, the district court rejected Scribner's motion. It noted that Scribner "maintained that he was innocent throughout trial and . . . even after his conviction." The court also cited his lawyer's view that Scribner was "resolute" in taking the case to trial. The court thus concluded Scribner did not, at the relevant time, believe he was guilty of the marijuana offenses. As a result, Scribner did not prove there was a reasonable probability he would have pled guilty had his counsel correctly informed him about his sentencing exposure. The court also concluded that even if Scribner would have been willing to plead guilty, Scribner would not have accepted the plea offered. Instead, he would have tried to get a "better" agreement. Additionally, the

court ruled that no evidence indicated Scribner would have been willing to admit intent to distribute, so the court would not have accepted his plea even if he made one.  And likewise, the court held that Scribner would not have received the acceptance of responsibility credit (meaning he would not have received a lower sentence), because he would not have admitted guilt.

A member of this court granted a certificate of appealability, authorizing this second appeal of the postconviction proceeding.

## II.

To establish a claim of ineffective assistance of counsel, Scribner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The government has conceded throughout the postconviction litigation that Scribner's counsel was constitutionally ineffective in giving incorrect advice about his sentencing exposure.  The focus has thus been on prejudice.  Under *Strickland*'s prejudice requirement, Scribner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  When a defendant contends that counsel's deficient performance caused him to reject a plea offer, the prejudice inquiry requires the defendant to show: (1) that but for counsel's ineffective advice, there is a reasonable probability that the defendant would have accepted the plea; (2) that the court would have accepted its terms; and (3) that under the plea, the sentence would have been less severe than the one imposed.  *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

The district court concluded that Scribner did not establish any of the three *Lafler* requirements.  But the same reasoning—that Scribner would not

have accepted a plea because he insisted on his innocence and wanted a trial—supported all three of its determinations.  Scribner correctly observes that the district court's holding thus turns entirely on its answer to the first question: whether Scribner would have accepted the plea.[1]  *Id.* at 164.

As a factual determination supporting the denial of a section 2255 petition, we review only for clear error the district court's finding on "[w]hether it is reasonably probable that [the] decision to plead guilty would have been different had he been properly counseled as to his potential punishment." *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).  That deferential standard requires us to uphold the district court's finding as long as it "is plausible in light of the record as a whole." *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012).

Scribner contends the finding of no prejudice was not plausible because of how much greater the benefit of pleading was under his actual sentencing exposure compared to the benefit under his counsel's mistaken advice.  *See Lee v. United States*, 137 S. Ct. 1958, 1966 (2017) (recognizing that the "decision whether to plead guilty" involves, in part, "assessing the respective consequences of a conviction after trial and by plea").  The difference is substantial.  Given what his counsel told him, Scribner thought a conviction at trial would result in a Guidelines range that, at the bottom end, was only seven

---

[1] For example, the district court concluded that Scribner did not establish the second requirement—whether the court would have accepted the terms of the plea agreement—because Scribner would not have been willing to accept responsibility at a plea hearing.  But that just repeats the first requirement.  The second inquiry is a distinct one that focuses not on the defendant's willingness to enter into a plea agreement (which includes his willingness to admit guilt) but on whether the court "would have accepted its *terms*." *Lafler*, 566 U.S. at 164 (emphasis added); *see also, e.g., Arnold v. Thaler*, 484 F. App'x 978, 982–83 (5th Cir. 2012) (remanding for habeas court to determine if trial court would have accepted the "15-year plea offer" that the defendant contended he would have agreed to absent counsel's bad advice).  As the magistrate judge pointed out, both of Scribner's codefendants pled guilty under the same agreement as the one offered Scribner, and the court accepted those pleas.

months greater than the range that would result from a plea. If counsel had given Scribner accurate advice, he would have known that a conviction at trial would have resulted in the lower end of the Guidelines range being 59 months higher than under a plea. So counsel's misadvice meant Scribner did not realize how much lower his sentence would likely be with a guilty plea as opposed to a trial conviction.

But that is just one way of looking at the plea calculus. When a defendant is considering a plea agreement, the comparison is not just between guilt at trial and guilt via a plea. The third option is that a jury will acquit. That, of course, is the whole point of going to trial. And had Scribner known his actual sentencing exposure, the benefit of an acquittal would have been much greater. Under counsel's mistaken advice, counsel thought an acquittal would save him from about three-to-four years in prison. Under his actual exposure, an acquittal would have saved him eighteen-to-twenty years in prison. So while a plea would have produced a greater benefit vis-à-vis a trial conviction under Scribner's actual sentencing exposure, the much higher overall exposure also meant there would have been a much greater benefit from an acquittal. Indeed, Scribner's trial counsel recognized in the postremand hearing that substantial sentencing exposure may make a defendant who believes in his innocence more likely to go to trial. She explained that while an innocence-professing defendant may enter into a plea for strategic reasons when sentencing exposure is low, "looking at a massive amount of time" may be a "motivating factor to take the case to trial because, of course, why on earth would you plead guilty and get a huge sentence when you feel that you are innocent."

Scribner believed he was innocent during the pendency of his case in the trial court. His repeated protestations of innocence to his counsel were the

main basis for the district court's finding that he would not have pled even if counsel had accurately advised him about his sentencing exposure. The record supports the finding that Scribner was "resolute in taking his case to trial" during his discussions with trial counsel.

Without disputing that he repeatedly maintained his innocence during discussions with trial counsel, Scribner contends it was improper to give much weight to those statements. He cites a Sixth Circuit opinion stating that a defendant's "repeated declarations of innocence do not prove, as the government claims, that he would not have accepted a guilty plea." *Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003). But there are two key differences between *Griffin* and this case, one procedural and the other substantive. *Griffin* did not decide the ultimate issue whether the petitioner was entitled to postconviction relief; the Sixth Circuit held only that the district court should have held a hearing. *Id*. at 739–40. As a result, *Griffin*'s statement that "repeated declarations of innocence" did not *disprove* the petitioner's claim must be read in the context of the statute requiring a hearing in section 2255 cases "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In contrast to the procedural posture of *Griffin*, Scribner received a hearing on this claim, which allowed the district court to assess credibility, weigh the evidence, and make findings.

The second difference is that the *Griffin* "declarations of innocence" were in-court statements, so the Sixth Circuit rejected heavy reliance on them in assessing the would-he-have-pled prejudice inquiry because "[d]efendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government." *Griffin*, 330 F.3d at 738. *Griffin* also noted that giving significant weight to in-court claims

of innocence was at odds with a defendant's Fifth Amendment rights. *Id.* Those same concerns are not present in Scribner's case. The district court did not rely exclusively on Scribner's in-court professions of innocence; Scribner repeatedly told his counsel in then-privileged statements that he was innocent and thus wanted a trial.

Finally, Supreme Court precedent more recent than *Griffin* supports the district court's reliance on Scribner's mindset before he was found guilty at trial. *Lee v. United States* addressed a *Strickland* claim that is the inverse of this one: the defendant who pled guilty contended he would have gone to trial but for counsel's ineffectiveness. 137 S. Ct. at 1962. In addressing how to answer the prejudice inquiry in that scenario, which poses a counterfactual inquiry also focused on a defendant's plea-or-trial decision, *Lee* offered the following guidance: "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's express preferences." *Id.* at 1967. The contemporaneous evidence of Scribner's intentions when he was deciding whether to take the plea offer supports the district court's finding. Scribner maintained his innocence and thought he could "beat" the charges. His counsel agreed that he had a "triable" case given that his involvement was limited to the post-distribution stage of dismantling the grow house. The belief that the case was triable proved to be a reasonable one; the jury acquitted Scribner on one of the two charges.

For these reasons, the district court's finding that Scribner would have wanted a trial even if he had accurate sentencing information was not clearly erroneous. The judgment is AFFIRMED.