*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEVIN DEANDRE WARE,

Defendant-Appellant.

UNPUBLISHED
September 17, 2020

No. 348310
Kalamazoo Circuit Court
LC No. 2015-001179-FC

Before: REDFORD, P.J., BECKERING and M. J. KELLY, JJ.

PER CURIAM.

In 2016, a jury convicted defendant of one count of armed robbery, MCL 750.529; and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On appeal, we reversed defendant's convictions on the basis of ineffective assistance of counsel arising from trial counsel's failure to file a timely motion to suppress non-*Mirandized* statements defendant made to police while he was in the hospital, and we remanded the matter for a new trial.[1] On remand, the trial court held an evidentiary hearing that resulted in the court's suppression of the statements. On retrial, defendant was convicted again of the same charges. He now appeals by right. For the reasons stated below, we affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

In August 2015, two men robbed TJ's Party Store in Kalamazoo, Michigan. One of the men brandished a firearm and wore a white cloth that covered his mouth, but exposed his nose and cheeks. The other individual was unarmed and did not wear a mask. Among the items they took

---

[1] *People v Kevin Deandre Ware*, unpublished per curiam opinion of the Court of Appeals, issued January 9, 2018 (Docket No. 333988).

were cash, cigarettes, and various bottles of liquor. Approximately an hour and a half after the robbery, Sheriff's deputies conducted a traffic stop on a vehicle driven by defendant in Van Buren County. Located in the vehicle were defendant, who initially identified himself as Jalen Johnson, and Kristopher Jackson, who ultimately pleaded guilty as the unarmed robber of the party store. Once deputies removed Jackson from the vehicle, defendant fled the scene in the car in an attempt to evade arrest. In the process of fleeing he crashed his vehicle, was ejected from it, and had to be airlifted to a hospital to receive treatment for his injuries. The Van Buren deputies contacted Kalamazoo Public Safety to inform it that they believed the men in the vehicle were the suspects in the party-store robbery.

A search of the vehicle revealed several items stolen from the party store, along with cash and a firearm matching the description of that used during the robbery. Although defendant was not wearing clothes that matched those worn by the individual who wore the mask during the robbery, the clothing of the masked individual was found in the backseat of the crashed vehicle. Defendant called Jackson as a witness at trial and Jackson denied that defendant was the masked individual.

As indicated, the jury found defendant guilty of armed robbery and felony-firearm. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for his armed-robbery conviction, with 541 days of credit, and a mandatory 2-year consecutive sentence for his felony-firearm conviction, with 731 days of jail credit. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he received ineffective assistance of counsel during the plea-bargaining phase because his trial counsel did not inquire into what sentence the prosecutor would recommend if defendant accepted the plea agreement offered.

Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Where the trial court has held a *Ginther*[2] hearing, we review the trial court's findings of fact for clear error and questions of law de novo. *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018) (quotation marks and citation omitted). Where, as here, no *Ginther* hearing was held,[3] our review is limited to mistakes apparent from the record. *Id*.

To prevail on a claim of ineffective assistance, a defendant must establish both deficient performance and prejudice. *Trakhtenberg*, 493 Mich at 51. To establish deficient performance, the defendant must show "that counsel's representation fell below an objective standard of

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Defendant filed a motion in this Court seeking remand for a *Ginther* hearing, but we denied the motion because we were not persuaded the remand was necessary. *People v Kevin Deandre Ware*, unpublished order of the Court of Appeals, entered November 4, 2019 (Docket No. 348310).

reasonableness." *Id*. To establish prejudice, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "Because defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

"A defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591; 852 NW2d 587 (2014). To demonstrate prejudice resulting from counsel's deficient performance in the plea-bargaining process, the " 'defendant must show the outcome of the plea process would have been different with competent advice.' " *Id*. at 592, quoting *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012).

At a settlement conference held days before defendant's trial, the prosecution placed on the record the plea agreement it had offered defendant:

> The offer is the same offer that was presented to the defendant prior to the first time he went to trial in this matter. That being if he pleads guilty to the count one and count two as a habitual second, the People would dismiss the remainder of the charges and the supplemental information. The important part of the offer is that that would also negate the mandatory 25 year minimum in this case. The People would keep our right to make a recommendation at the time of sentencing.

Defendant agreed on the record that his attorney had relayed this offer to him, and that he had discussed it with his attorney, but he said that he wanted to proceed to trial. On appeal, defendant contends that he asked his trial counsel what the prosecution's sentencing recommendation was going to be, and she responded that she did not know. Defendant asserts that "it was deficient performance for trial counsel not to have made *some* inquiry of the prosecution as to what recommendations they were considering" (emphasis defendant's).

Assuming for the sake of argument that defendant's trial counsel did not inquire into the prosecution's anticipated sentencing recommendation, defendant has cited no authority supporting his assertion that failure to do so constitutes deficient performance at the plea-bargaining stage. The record shows that trial counsel accurately relayed the prosecution's favorable plea-agreement offer to defendant. See *Missouri v Frye*, 566 US 134, 145; 132 S Ct 1399, 1408; 182 L Ed 2d 379 (2012) (holding that defense counsel has a duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). And there is no record evidence, nor does defendant assert, that counsel gave him legally flawed advice that caused him to reject the plea-agreement. See *Lafler*, 566 US at 161; 132 S Ct 1376, 1383 (where trial counsel erroneously informed defendant the prosecution could not establish intent to murder because defendant shot the victim below the waist); see also *People v McCauley*, 287 Mich App 158, 164; 782 NW2d 520 (2010) (where trial counsel misinformed defendant that he could not be convicted of felony murder because he did not fire the fatal shot), rev'd on other grounds 493 Mich 872 (2012). There may be a case where trial counsel's failure to inquire into the

prosecution's anticipated sentencing recommendation could constitute deficient performance, but this does not strike us as that case.

Further, even if we assumed for the sake of argument that trial counsel's failure to ask about the prosecution's sentencing recommendation constituted deficient performance, defendant has failed to show prejudice. In *Griffin v United States*, 330 F3d 733, 737 (CA 6, 2003), the Sixth Circuit Court addressed the evidence necessary for a defendant to establish the prejudice prong, concluding that "a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer." Relying on this proposition, defendant argues that the gross disparity between the 126-month minimum sentence he could have received and the 25-year minimum sentence that he did receive demonstrates that there was a reasonable probability he would have accepted the plea had he been properly informed.[4]

The present defendant's situation is distinguishable from that of the defendant in *Griffin*. Counsel for the defendant in *Griffin* failed to relay the Assistant United States Attorney's offer of a five-year sentence, conditioned on the defendant's cooperating with authorities. *Griffin*, 330 F3d at 734-735. The defendant went to trial, was convicted, and was then sentenced to 13 years in prison, five years of parole, and a $200 special assessment. *Id*. at 735. In light of these circumstances, the Sixth Circuit concluded that prejudice had resulted from trial counsel's failure to relay the plea-agreement offer to defendant because the disparity between the five-year offer and the 13-year sentence established a reasonable probability that, had his attorney properly informed him of the five-year offer, defendant would have accepted it. See *id*. at 737.

Unlike the defendant in *Griffin*, the present defendant was fully aware of the prosecution's plea-agreement offer and that it allowed him to avoid the 25-year mandatory minimum sentence he would be subject to as a fourth habitual offender if convicted, MCL 769.12(1)(a). Part of the plea offer was that the prosecution retained its right to recommend a sentence. Given that the prosecution had expressly taken the 25-year mandatory minimum sentence off the table as part of the plea offer, there was no reason to believe that the prosecutor would recommend a sentence of 25 years or more. Further, the plea offer did not obligate the prosecution to inform defendant of its anticipated sentencing recommendation, and even if the prosecution had told defendant what it planned to recommend, the court was not obligated to accept the recommendation. See *People v Swirles*, 218 Mich App 133, 140; 553 NW2d 357 (1996) (indicating that a prosecutor's sentencing recommendation does not limit the court's sentencing discretion). Thus, the only concrete information defendant would possess to factor into his decision whether to accept the plea-

---

[4] According to defendant's sentencing information report, the court assessed defendant 77 prior record variable points and 30 offense variable points. This put defendant in the F-II sentencing grid for Class A offenses, and called for a minimum sentence for a fourth habitual offender of 126 to 420 months. Had defendant accepted the plea agreement, he would have been sentenced as a second habitual offender, subject to a minimum sentence of 126 to 262 months. As it was, he was subject to a minimum sentence of 300 (25-year mandatory minimum) to 420 months.

agreement offer was the expressed terms of the offer itself. Defendant did not receive a greater sentence as a result of ineffective assistance of counsel; he received precisely the sentence he knew he would if he rejected the plea offer and was convicted at trial. Having been convicted and sentenced as he knew he would be, defendant now seeks to avoid the consequences of his choices. Given the record before us, and assuming for the sake of argument that counsel's performance was constitutionally deficient, we conclude that defendant has failed to show prejudice from counsel's failure to inquire into the prosecution's anticipated sentencing recommendation.

Defendant having failed to meet his burden to establish both prongs of the test for ineffective assistance of counsel, his claim must fail. See *Trakhtenberg*, 493 Mich at 51.

### III. MRE 404(B) EVIDENCE

Defendant next argues that the trial court erred in admitting evidence of defendant's flight from Sheriff's deputies in Van Buren County because the evidence was not relevant and the prosecution had not fulfilled the notice required by MRE 404(b)(2). We disagree.

Defendant did not preserve this issue for appellate review with a timely objection in the trial court. See *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) (indicating that to preserve most issues for appellate review, a party must object below). Therefore, our review is for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "An error is plain if it is 'clear or obvious,' and it affects substantial rights if it 'affected the outcome of the lower court proceedings.' " *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019), quoting *Carines*, 460 Mich at 763.

MRE 404(b)(1) prohibits evidence of other crimes, wrongs, or acts, from being used to prove a defendant's character and that the defendant committed the charged crimes in conformity with his or her character. MRE 404(b)(1) states:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b) is a rule of inclusion, not of exclusion. See *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015). It excludes evidence of other acts where the only logical relevance of the evidence is to show a defendant's character for wrongdoing or criminal propensity, and the sole purpose of the evidence is to prove that the defendant acted in accordance with that character or criminal propensity to commit the charged crimes. See *id*. at 258. "Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character." *Id*. at 259.

Other-acts evidence is admissible if relevant and offered for a proper purpose, and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Other-acts evidence is relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence. MRE 401. "A material fact is one that . . . is within the range of litigated matters in controversy." *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000) (quotation marks and citation omitted). A proper purpose is one that requires the factfinder to make an intermediate inference other than one about a defendant's character or criminal propensity. See *id*. at 87. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Evidence of defendant's flight from Van Buren Sheriff's deputies was relevant to the material issue of the identity of the perpetrators of the armed robbery at issue. Relevance involves materiality and probative value. *People v McGhee*, 268 Mich App 600, 610; 709 NW2d 595 (2005). "Materiality refers to whether the fact was truly at issue." *Id*. Defendant entered a plea of not guilty, which "requires the prosecution to prove every element of the offense." *Id*. "[I]dentity is an element of every offense." *People v Savage*, 327 Mich App 604, 614; 935 NW2d 69 (2019). Evidence of flight is also probative "because it may indicate consciousness of guilt . . . ." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995); see also *McGhee*, 268 Mich App at 613 ("Evidence of flight may be used to show consciousness of guilt"). "The term "flight" has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Coleman*, 210 Mich App at 4. "[I]t is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt." *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008).

In the present case, Deputy Robert Miersma of the Van Buren Sheriff's Department testified that he and his partner received a dispatch to be on the lookout ("BOL") for two men who had robbed a party store in Kalamazoo. The dispatch provided descriptions of the men and of the clothing they had been wearing, as captured by the store's video surveillance camera. Approximately 90 minutes after receiving the BOL, the deputies noticed a car with too-dark tint on the passenger-side window and executed a traffic stop. Deputy Miersma testified that he approached the passenger's side of the vehicle while his partner approached the driver's side, and that as soon as he saw the passenger, he recognized that he and his clothing matched the description of one of the robbers provided by the BOL. Seeing that the passenger had an open container of alcohol by his leg, he took the passenger into custody and placed him in the backseat of the patrol car while his partner remained with the driver of the vehicle, who turned out to be defendant. As Deputy Miersma went back toward the stopped vehicle, defendant started the car and sped away from the scene, "pedal to the metal." The deputies pursued defendant, who eventually crashed the car and had to be taken by helicopter to the hospital for treatment of the injuries he suffered in the crash.

Considering that the armed robbery at issue had happened in a neighboring county less than two hours before the deputies stopped the car defendant was driving, that Deputy Miersma recognized the passenger as one of the men described in the BOL, and that the deputy arrested the passenger and put him in the back seat of the officer's patrol car and was heading back to

defendant's side of the stopped vehicle to speak with defendant, the evidence that defendant fled was both relevant to and probative of the question of whether he was one of the robbers involved in the party-store robbery. That defendant started the car and sped away while one deputy was standing at his window and another was on his way back to the vehicle clearly shows defendant's intent to avoid further scrutiny and possible arrest. Defendant's implication to the contrary notwithstanding, "[e]vidence of flight may be used to show consciousness of guilt." *McGhee*, 268 Mich App at 613. Thus, evidence that defendant fled from the deputies was relevant and offered for a proper purpose, and defendant has identified no impermissible character-to-conduct inference that would weigh against admission under the MRE 403 balancing test.

Further, it is undisputed that the prosecution did not provide notice to defendant of its intent to elicit evidence of defendant's fleeing and eluding. However, under the circumstances presented here, we conclude that the omission was harmless.

MRE 404(b)(2) requires the prosecution to provide pretrial notice of its intent to use 404(b) evidence as follows :

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

MRE 404(b)(2)'s requirement that the prosecution give "pretrial notice of its intent to introduce other acts evidence at trial is designed to "promote [ ] reliable decision making," to "prevent[ ] unfair surprise," and to "offer [ ] the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice." *Jackson*, 498 Mich at 261, quoting *VanderVliet*, 444 Mich at 89, 89 n 1. Where failure to give the required notice does not result in the admission of substantively improper other-acts evidence, defendants were not unfairly surprised, and defendants do not show that their arguments against admission of the evidence "would have been availing" or that they would have called witnesses to counter the other-acts evidence, or that they would have changed their defense strategy had they known that the other-acts evidence was going to be offered, failure to comply with the notice requirement is harmless error. See *Jackson*, 498 Mich at 278-279.

As discussed above, the prosecution's failure to comply with the notice requirement did not result in the admission of substantively inadmissible other-acts evidence: the evidence was relevant, offered for a proper purpose, and there is no evidence that the danger of unfair prejudice substantially outweighed its relevance. In addition, defendant was not unfairly surprised. This was defendant's second trial on the armed robbery charge, the evidence of flight had been admitted at his first trial, and the record shows that defense counsel had copies of the transcripts from the first trial. Thus, that the prosecution would elicit testimony about defendant's flight from the

deputies was not a surprise. Further, as we explained above, defendant's argument against admission of the evidence because it was not relevant and allowed the jury to infer a guilty conscience is unavailing. Finally, defendant has not indicated how, or whether, he would have called additional witnesses or changed his defense strategy had he known in advance that the evidence of flight would be admitted. Given the foregoing, we conclude that the prosecution's failure to notify defendant that it would elicit testimony about defendant's flight from the deputies is harmless error. See *id*.

## IV. ADMISSION OF PHOTOGRAPHS

Next, defendant contends that the trial court abused its discretion by allowing the prosecution to admit certain photographs of defendant because any probative value the photographs might have had was substantially outweighed by the danger of unfair prejudice, MRE 403. We disagree.

This Court reviews claims of evidentiary error for an abuse of discretion. See *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 483 (quotation marks and citation omitted). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Douglas*, 496 Mich at 565-566 (quotation marks and citation omitted).

As already indicated, evidence is relevant if it has "any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. All relevant evidence is admissible at trial unless otherwise prohibited by the United States or Michigan Constitutions, the rules of evidence, or other rules adopted by the Supreme Court. MRE 402. However, even relevant evidence is inadmissible if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. MRE 403. In the context of MRE 403, "prejudice means more than simply damage to the opponent's cause." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). It means that evidence has an "undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *Id*. Relevant considerations in determining unfair prejudice include whether the jury will give marginally probative evidence undue or preemptive weight and whether the use of the evidence is inequitable. See *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995). "Mere prejudice is insufficient to justify reversal." *People v Albers*, 258 Mich App 578, 591; 672 NW2d 336 (2003).

The evidence at issue consisted of three photographs: one showing a front-facing headshot, the second showing defendant in profile, and the third a collage showing defendant's front-facing headshot next to two still photographs taken from the video surveillance at TJ's Party Store. The still photographs depicted an individual wearing a knit cap and a white mask that covered the individual's mouth, but exposed the person's nose and cheeks. Defendant concedes that the photograph evidence was relevant, but contends that they were unduly prejudicial because they

showed him in jail garb. He argues that the jury could easily have made a comparison between him and the individual shown in the still photographs on the basis of its observation of him over the course of the three-day trial. According to defendant, the only conceivable purpose of admitting the photographs was to remind the jury that he had been arrested and was currently a prisoner, and to suggest that the police had arrested the right person.

Contrary to defendant's argument, the photographs of defendant does not clearly show him in jail garb. After reviewing the photographs, we agree with the trial court that the photographs are cropped in such a way that defendant appears to be wearing an orange collared shirt, and that nothing in the photographs indicate where they were taken. At the same time, we acknowledge that the photograph of defendant in profile might suggest that it was taken under circumstances of confinement. Even so, we cannot say that any prejudice arising from the suggestiveness of the profile picture substantially outweighed the probative value of the photographs.

Defendant's conviction for armed robbery rested on circumstantial evidence of his identity. These photographs, particularly the collage, were probative of the identity of the perpetrator of the robbery, a material fact the prosecution needed to prove. See *Savage*, 327 Mich App at 614. The jury was able to examine the photographs closely to determine whether they depicted the same person shown in the stills from the surveillance camera. Defendant argues that the photographs were unnecessary because the jury could have decided if he was the same person pictured in the surveillance video based on its observation of him during the three-day trial. However, jurors obviously could have studied the photographs in the jury room far more critically than they could have scrutinized defendant during the trial. Moreover, "[t]here is no rule requiring the prosecution to use only the least prejudicial evidence per se to establish facts at issue." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995).

Finally, we find unpersuasive defendant's argument that the purpose of the photographs was merely to remind the jury that he had been arrested and confined, and that the police arrested the right person. It seems unlikely that the jury would have been unaware that defendant had been arrested or that it would have forgotten that fact over the course of the three-day criminal trial, and it seems highly likely that it would have assumed that the police thought they arrested the right person. The circumstantial nature of the evidence against defendant meant that the photographs were critical pieces of evidence for the jury to use in determining if the police really had arrested the right person, and the headshots of defendant did not clearly indicate that he was wearing jail garb. Under these circumstances, we conclude that the probative value of the photographs was not substantially outweighed by any danger of undue prejudice. MRE 403. Admitting the photographs into evidence was within the range of reasonable and principled outcomes and, therefore, the trial court's evidentiary ruling was not an abuse of discretion. See *Bergman*, 312 Mich App at 482, 483.

## V. DEFENDANT'S REMAINING ISSUES

Defendant raises two issues in a Standard 4 Brief,[5] neither of which have merit. Defendant first argues that defense counsel was ineffective for failing to challenge the district court's bindover on the basis of this Court's previous decision reversing defendant's convictions for a new trial and its statement that the "evidence of defendant's guilt was circumstantial," *Ware*, unpub op at 6. However, because defendant has been "fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover.' " *People v Bosca*, 310 Mich App 1, 45; 871 NW2d 307 (2015), quoting *People v Wilson*, 469 Mich 1018, 1018; 677 NW2d 29 (2004). Moreover, to the extent that defendant assumes that circumstantial evidence is insufficient to support a conviction, he is mistaken. "Circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Therefore, we reject defendant's argument that defense counsel was ineffective for failing to challenge to the district court's bindover.

Next, defendant argues that defense counsel was ineffective for failing to strike a juror from his jury because of her relationship with law enforcement. Defendant's assertion is without factual basis. The record shows that the juror in question did not serve on the jury that convicted defendant because she was struck for cause during voir dire.

Affirmed.

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[5] A "Standard 4" brief refers to the brief a defendant may file in propria persona pursuant to Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).